# UNITED STATES DISTRICT COURT

for the

Southern District of Ohio

FILED

11 SEP -8 PM 2:05

MICHAEL R. MERZ
UNITED STATES
MAGISTRATE JUDGE

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*
Information asociated with Verizon cellular phone no.: (567) 225-1149

) ) ) ) ) )

Case No.  3:11mj-209

MICHAEL R. MERZ

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*: See Attachment A.

located in the _____Southern_____ District of _____Ohio_____, there is now concealed *(identify the person or describe the property to be seized)*: See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. section 846 | Conspiracy to distribute and possess with intent to distribute a mixture or substance containing a detectable amount of Heron, a Schedule I controlled substance. |

The application is based on these facts:
See Attached Affidavit.

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

J. Matthew Allen, Special Agent with DEA
*Printed name and title*

Sworn to before me and signed in my presence.

Date: September 22, 2011

City and state: Dayton, Ohio

*Judge's signature*

Michael R. Merz, United States Magistrate Judge
*Printed name and title*

## ATTACHMENT A

**Property to Be Searched**

This warrant applies to information associated with **(567) 225-1149** that is stored at premises owned, maintained, controlled, or operated by Verizon Wireless, (Law Enforcement Resource Team Court Compliance Group), a wireless provider located at 180 Washington Valley Road, Bedminster, New Jersey.

## ATTACHMENT B

### Particular Things to be Seized

### I. Information to be disclosed by Verizon Wireless

To the extent that the information described in Attachment A is within the possession, custody, or control of Verizon Wireless, Verizon Wireless is required to disclose the following information to the government for each account or identifier listed in Attachment A:

a. All voice mail, text, and multimedia messages stored and presently contained in, or on behalf of the account or identifier for the period August 26, 2011 through September 8, 2011;

b. All existing printouts from original storage of all of the text messages described above;

c. All text messaging logs, including date and time of messages, and identification numbers associated with the handsets sending and receiving the message;

### II. Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of 21 U.S.C. 841 and 846 involving CVLR and others, from August 26, 2011 through September 8, 2011, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

a. "the sale of illegal drugs";

b. "communications between CVLR and co-conspirators and/or customers";

c. records relating to who created, used, or communicated with the account or identifier, including records about their identities and whereabouts

# AFFIDAVIT IN SUPPORT OF
# AN APPLICATION FOR A SEARCH WARRANT

I, John M. Allen, being first duly sworn, hereby depose and state as follows:

1. I make this Affidavit is in support of an application for a search warrant for information associated with a certain account that is stored at a premises owned, maintained, controlled, or operated by Verizon Wireless (Law Enforcement Resource Team Court Compliance Group), a wireless provider located at 180 Washington Valley Road, Bedminster, New Jersey. The information to be searched is described in the following paragraphs and in Attachment A. This Affidavit is made in support of an application for a search warrant under 18 United States Code (U.S.C.) Sections 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Verizon Wireless to disclose to the government records and other information in its possession pertaining to the subscriber or customer associated with the accounts, including the contents of communications.

2. I, John M. Allen, hereinafter referred to the Affiant, am a Special Agent of the Drug Enforcement Administration (DEA), United States Department of Justice, and I hereby set forth the following facts in support of a search warrant for historical stored communications associated with cellular telephone **(567) 225-1149** subscribed to "OAS Phone in the Box," 30 Independence Blvd, Warren, NJ 07059, and used by Cesar LOPEZ-Ruiz within the Toledo Correctional Facility in Toledo, Ohio.

3. I am an employee of the DEA currently assigned to the Dayton Resident Office. I have been employed with the DEA as a Special Agent since September, 2010. I attended and graduated from the basic agent training course in Quantico, Virginia. I have received extensive training in the investigation of violations of federal drug laws and have participated in drug trafficking investigations since 2010 in the course of my employment as a Special Agent with DEA. Prior to being employed with DEA, Affiant was a Kentucky State Trooper for approximately 5 years, during which Affiant participated in drug trafficking investigations.

4. As a Special Agent for the DEA your Affiant is charged with the duty of enforcing the Controlled Substances Act, Title 21, of the United States Code, along with other assigned duties as imposed by federal law.

5. By virtue of your Affiant's employment with the DEA he has performed various tasks, related to the investigation of federal drug trafficking violations, which include, but are not limited to:

    a. Functioning as a case agent conducting the specific supervisory aspects of a drug trafficking investigation;

    b. Functioning as an investigator for the primary purpose of determining the means and methods of communication used by drug traffickers and drug trafficking organizations;

    c. The tracing and tracking of communication devices, specifically cellular telephones, used by drug traffickers and drug trafficking organizations in the course of their illegal activities;

6. The facts in this Affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This Affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

7. Based on my training and experience and the facts as set forth in this Affidavit, there is probable cause to believe that violations of federal statutes, specifically, conspiracy to possess with intent to distribute and distribute controlled substances (21 U.S.C. 841 and 846) in the Southern District of Ohio, have been committed by **Cesar Valentine Lope-Ruiz** (referred to as "CVLR" in Attachment B) and others associated with him. There is also probable cause to search the information described in Attachment A for evidence of these crime, as described in Attachment B.

## FACTS

8. For the past two years the DEA Dayton Resident Office has been investigating a heroin trafficking organization based in Michoacan, Mexico that is sending heroin to the United States, to include Dayton Ohio. The heroin has been sent via internal body couriers (among other ways) to customers that distribute the heroin to users. During the investigation, it was learned Cesar Valentine Lopez-Ruiz was arranging heroin customers in prison for who are believed to be his brothers in Mexico, and who are the heroin source of supply. Lopez-Ruiz is currently serving a twenty year Ohio state prison sentence and is lodged at the Toledo Correctional Facility (TOCI), located in Toledo, Ohio. Several members of this drug conspiracy have been indicted and/or convicted in the United States District Court in Dayton, Ohio.

9. During this investigation, investigators learned Lopez-Ruiz had obtained a clandestine cellular telephone and used it to contact heroin customers while in prison. In November of 2010, investigators obtained court authorization to monitor telephonic communication and pen register information from cellular telephone **(567) 225-1149**. During the interception, Lopez-Ruiz was intercepted and the main user of the phone. Investigators noted on several occasions that **(567) 225-1149** was used for text messaging during this time period, and during which conversations about criminal activity occurred.

10. On November 26, 2010, investigators intercepted a call over **(567) 225-1149,** labeled session number 603, involving Lopez-Ruiz as one of the participants. The other participant was Michael Stephens, a known heroin customer of Lopez-Ruiz's brothers in Mexico. During the call, investigators determined that Lopez-Ruiz asked Stephens if he had obtained heroin from his brothers. The conversation appeared to be a discussion about an amount of heroin that Stephens was supposed to receive that day. Investigators were aware that Stephens was supposed to receive two kilograms of heroin from the sources of supply, which had been seized by law enforcement prior to this intercepted call.

11. On November 26, 2010, investigators intercepted a call over **(567) 225-1149,** labeled session 643 and made by Cesar Lopez-Ruiz. The call was to Mexico and believed to be to one of Lopez-Ruiz's brothers (identity known to Affiant). During the call, Lopez-Ruiz and his brother discussed upcoming shipments of narcotics, and further it is believed the call referenced a cooperating defendant hereinafter referred to as "CD2." During the call, Lopez-Ruiz's brother stated he had not received a text sent by Lopez-Ruiz. Investigators again noted several text messages being sent via a pen register operating on the **(567) 225-1149** telephone at that time.

12. In the winter of 2011, investigators conducted multiple interviews of a cooperating defendant, referred to in this affidavit as "CD1." CD1 made numerous statements that were able to be corroborated by law enforcement and his/her statements are believed to be credible. CD1 stated he/she knows Lopez-Ruiz, and further was incarcerated with Lopez-Ruiz in Ohio. CD1 learned Lopez-Ruiz was a heroin distributor arranging customers for Lopez-Ruiz's brothers, who are in Mexico. CD1 stated upon being released from prison, CD1 talked with Lopez-Ruiz frequently and was sent heroin by Lopez-Ruiz's brother numerous times in 2010, after the arrangements were made by Lopez-Ruiz. CD1 stated he/she talked with Lopez-Ruiz numerous times in October and November 2010 over the **(567) 225-1149** telephone. CD1 stated Lopez-Ruiz hides the phone in his jail cell and/or in his rectum. CD1 stated he/she sent text messages to Lopez-Ruiz at the **(567) 225-1149** phone on numerous occasions, and that the text messages related to narcotic trafficking.

13. CD1 further stated that members of this DTO used text messages as a way to send names of couriers to CD1. CD1 said names, flights, and other information related to heroin trafficking were sent via text message by the sources in Mexico.

14. In May, 2011, investigators conducted interviews of CD2. CD2 is believed to be truthful and credible as several statements were able to be corroborated by law enforcement and other means. CD2 stated he/she was receiving heroin from sources in Mexico that were arranged through a person named Cesar Lopez-Ruiz, who was in prison in the Toledo Correctional Facility. CD2 stated he/she has sent items to Lopez-Ruiz, but never met him personally. CD2 stated a cellmate of Lopez-Ruiz was arranging narcotics for CD2, but over a period of time CD2 eventually started talking directly to Lopez-Ruiz. CD2 stated he/she talked with LOPEZ-Ruiz via a clandestine cell phone that Lopez-Ruiz had in the prison. Investigators know this to be a true statement, as CS2 was intercepted talking to Lopez-Ruiz over the **(567) 225-1149** cellular telephone in November of 2010 during the court authorized wiretap. CD2 statements were similar to CD1 that the organization used internal body couriers to transport the heroin, and that most of the trips were coordinated through Lopez-Ruiz and the **(567) 225-1149** telephone.

15. In June, 2011, investigators learned that the sources in Mexico were still sending heroin couriers to the United States and that Lopez-Ruiz was still involved in arranging the customers. Specifically, on June 22, 2011, investigators in Akron, Ohio conducted surveillance of a suspected heroin courier and heroin customers. During the surveillance, investigators stopped a person identified hereafter as "J.D." with three heroin pellets that appeared to have digested and passed by a heroin courier. During J.D.'s arrest,

investigators noted a piece of paper containing several telephone numbers, including the **(567) 225-1149** number with the label "Lopez" next to it. Investigators are aware that the moniker "Lopez" has been often used to described or name Cesar Valentine Lopez-Ruiz.

16. In July, 2011, investigators received current telephone tolls for cellular telephone **(567) 225-1149,** and learned the phone was still active and appeared to still be used by Lopez-Ruiz. Investigators observed the phone was in contacted with a Mexican number (011-5214525206775), suspected to be a new cellular telephone in Mexico for the sources of supply noted in this affidavit. Investigators saw that several text messages had been sent to this new source phone from the **(567) 225-1149** phone in June and July, 2011. The last known text message sent to the above noted number occurred on July 24, 2011. The range of the tolls was up through July 25, 2011.

17. Investigators viewed the tolls and further believe the phone is still used and maintained by Cesar Lopez-Ruiz due to the subscriber remaining consistent since November 2010, when the calls were intercepted and Lopez-Ruiz was the user of the phone. Further, investigators noted multiple numbers that were contacted by the phone in July 2011 and were also intercepted in November 2010, when Lopez-Ruiz was the user of the telephone. Also, the phone tolls consistently display a Verizon wireless out of area routing number for calls. Investigators learned this is common when the phone is not in the primary area code (consistent with past usage) due to the Toledo Correctional Facility being out of the calling area range for the area code of cell phone.

18. In July 2011, investigators began sending preservation letters to Verizon Wireless for the electronically stored and maintained data, specifically all "text messaging" account contents associated with cellular **(567) 225-1149**, for the period of July 20, 2011 through August 1, 2011.

19. On August 3, 2011, investigators previously obtained a search warrant for the text messages preserved for the **(567) 225-1149** account from Honorable Michael R. Merz, United States Magistrate Judge for the Southern District of Ohio. Upon serving the warrant to Verizon, a period of time elapsed and investigators were ultimately provided text message data for a phone number not the subject of the search warrant. Upon contacting Verizon, investigators learned the previously preserved data that was the subject of the warrant had been destroyed. On or about August 29, 2011, investigators sent a new request to preserve the text message data for the 5 days prior to the new request and up to the present. Affiant is aware that **(567) 225-1149** is still in use, as pen register data reflects the phone was used as recently as the early morning hours of September 8, 2011. Affiant requests a new search warrant be issued to obtain any text message data presently preserved by Verizon.

20. In my training and experience, I have learned that Verizon Wireless is a company that provides cellular telephone access to the general public, and that stored electronic communications, including retrieved and un-retrieved voicemail, text and multimedia messages for Verizon Wireless subscribers may be located on the computers of Verizon Wireless. Further, I am aware that computers located at Verizon Wireless contain information and other stored electronic communications belonging to unrelated third parties.

21. Among the services commonly offered by wireless phone providers is the capacity to send short text or multimedia messages (photos, audio, or video) from one subscriber's phone or wireless device to another phone or wireless device via one or more wireless providers. This service is often referred to as "Short Message Service ("SMS") or "Multimedia Messaging Service" ("MMS"), and is often referred to generically as "text messaging" or "wireless messaging." Based on my knowledge and experience, I believe that stored electronic communications, including SMS and MMS messages that have been sent or received by subscribers, may be stored by Verizon Wireless for short periods incident to and following their transmission. In addition, providers occasionally retain printouts from original storage of text messages for a particular subscriber's account.

22. Wireless phone providers typically retain certain transactional information about the use of each telephone, voicemail and text messaging account on their systems. This information can include log files and messaging logs showing all activity on the account, such as local and long distance telephone connection records, records of session times and durations, lists of all incoming and outgoing telephone numbers or e-mail addresses associated with particular telephone calls, voicemail messages, and text or multimedia messages. Providers may also have information about the dates, times, and methods of connecting associated with every communication in which a particular cellular device was involved.

23. Wireless providers may also retain text messaging logs that include specific information about text and multimedia messages sent or received from the account, such as the dates and times of the messages. A provider may also retain information about which cellular handset or devices was associated with the account when the messages were sent or received. The provider could have this information because each cellular device has one or more unique identifiers embedded inside it. Depending upon the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Station Equipment Identity ("IMEI"). When a cellular device connects to a cellular antenna or tower, it reveals its embedded unique identifiers to the cellular antenna or tower in order to obtain service, and the cellular antenna or tower records those identifiers as a matter of course.

### INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

24. I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Verizon Wireless to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

25. Based on the foregoing, I request that the Court issue the proposed search warrant.

26. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. Specifically, the Court is "a district court of the United States (including a magistrate judge of such a court)... that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

27. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

28. Based on the facts set forth in the affidavit, your Affiant believes that there is probable cause to believe that cellular telephone **(567) 225-1149**, was and is being used by Lopez-Ruiz in furtherance of illegal drug trafficking activities. Furthermore, your affiant believes that the text messages preserved, at the request of your Affiant by Verizon Wireless, will contain evidence of the ongoing drug trafficking conspiracy and assist law enforcement in this investigation.

## REQUEST FOR SEALING

29. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

_____
John M. Allen
Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me on September 8, 2011.

_____
MICHAEL R. MERZ
UNITED STATES MAGISTRATE JUDGE